**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**BRIAN CONERLY; And
RACHEL REESE**                                                          **PLAINTIFFS**


**VERSUS**                                        **CIVIL ACTION NO. 2:06cv205KS-MTP**


**MARSHALL DURBIN COMPANY**                                         **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion and Amended/Supplemental Motion to

Dismiss or for Summary Judgment **[#s 28 & 72]** filed on behalf of the defendant and on

the plaintiffs' Motion and Amended Motion for Notice to Potential Class Members **[#s

39, 49, 92 and 110]**.  The court, having reviewed the motions, the responses, the

pleadings and exhibits on file, having conducted oral argument on the issues and being

otherwise fully advised in the premises finds that the defendant's Motion for Summary

Judgment should be denied and that the plaintiffs' Amended Motion for Notice to

Potential Class Members should be granted and that a conditional class should be

certified as a collective action.  The court specifically finds as follows:


**FACTUAL BACKGROUND**

This case was originally brought by twelve (12) named plaintiffs who ostensibly

worked on poultry production lines for Marshall Durbin.  Originally, the twelve plaintiffs

brought Fair Labor Standards Act claims allegedly pertaining to two (2) of the

defendant's plant facilities, one being situated in Jasper, Alabama, and one situated in Hattiesburg, Mississippi.  The Jasper plaintiffs and claims are subject to binding arbitration and by separate Order of this Court, are no longer part of this civil action. Subsequent to various amendments and corrections, this action is now being brought by two (2) plaintiffs, Brian Conerly and Rachel Reese, individually, and on behalf of other similarly situated employees of the Marshall Durbin Food Corporation plant in Hattiesburg, Mississippi.

The plaintiffs' Second Amended Complaint effectuated a wholesale substitution of plaintiffs, deleting the twelve former or current employees of the defendant's Hattiesburg, Mississippi facility, and replacing them with Brian Conerly ("Conerly") and Rachel Reese ("Reese") two former employees at the Hattiesburg processing plant.  The Second Amended Complaint alleges an action to recover allegedly unpaid wages/overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.* and arising from the plaintiffs' employment with Marshall Durbin Food Corporation, including wages claimed to be due *inter alia* from obtaining, doffing and donning protective gear or hygiene items, and walking to and from the plaintiffs' work stations at the defendant's plant, as well as other pre-shift and post-shift activities which the plaintiffs claim were necessary to their employment.

The allegations of the plaintiffs' Third Amended Complaint as filed on June 14, 2007, were that the plaintiffs were not properly compensated for the following activities:

(a) obtaining required protective gear and hygiene related equipment from the designated areas in the plant;

(b) walking to and from the workstation, the processing line or both;

2

(c) donning and doffing protective gear and hygiene-related equipment before their shift started, during their shift, and after their scheduled shift was over;

(d) waiting for their shift to begin or for their relief to arrive;

(e) washing and cleaning their tools or other equipment; and

(f) general pre- and post-shift activities which were required by the company and were necessary to the performance of their job.

Based on the foregoing, the plaintiffs allege a knowing, willful "pattern or practice of failing to pay Plaintiffs and all those similarly situated overtime compensation" in violation of the Fair Labor Standards Act ("FLSA") – specifically § 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207 and 215(a)(2).  The plaintiffs demand overtime wages in an amount equal to one and one-half times their rate of pay, liquidated damages, attorney's fees and costs.

At all times material herein, Conerly and Reese were in a collective bargaining unit represented by the United Food and Commercial Workers Union.  Since 1993 a collective bargaining agreement has been in effect between the defendant and this union.  The current AGREEMENT BETWEEN MARSHALL DURBIN FOOD CORPORATION AND UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL-CIO was entered into on November 4, 2004, with an effective date of November 7, 2004, and remains in effect.  All parties agree that this Collective Bargaining Agreement is applicable to defendant's former Hattiesburg poultry processing plant employees Conerly and Reese and is binding on all collective bargaining unit employees at the Hattiesburg plant.  The parties also agree that the subject collective bargaining agreement itself does not contain any provision for the

compensability of any of the employment activities enumerated within the four corners of the Second or Third Amended Complaints.

According to the defendant's theory, 29 USC. § 203(o) of the FLSA explicitly excludes time spent changing clothes or washing if (1) there is a collective bargaining agreement with express terms excluding such time, or (2) there is a custom or practice of non-compensation under a collective bargaining agreement.  *See* 29 USC. § 203(o) (2005).   Thus, while the defendant contends that it properly compensated the plaintiffs for doffing and donning time, for purposes of this motion only, if any deficiencies actually existed, they contend that such were excused by §203(o) because they resulted from a custom or practice and therefore could not constitute a violation of the FLSA thus entitling the defendant to summary judgment.


**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the

evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his

motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The

movant accomplishes this by informing the court of the basis of its motion, and by

identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

> "Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation

to respond unless the movant discharges [its] initial burden of demonstrating

[entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating

such for failure to respond to an opposed motion.  *Id.* at 709.

> However, once a properly supported motion for summary judgment is presented,

the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the

nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

*Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

> While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## THE COLLECTIVE BARGAINING AGREEMENT

Marshall Durbin and the UFCW have a history of bargaining over terms and conditions of employment and have entered into a series of Collective Bargaining Agreements (CBAs).  No provisions regarding compensation for donning and doffing have been included in any of the previous Collective Bargaining Agreements nor are any included in the current CBA executed between the company and the union on November 4, 2004.  According to the defendant, the Union, acting by and through Eddie F. James (the Union's signatory to the 2004 Collective Bargaining Agreement) knew and was aware, prior to the effective date of the 2004 CBA, of precisely how and in what manner and for what activities Marshall Durbin did or did not compensate its employees at the Hattiesburg plant and the plaintiffs are bound by that knowledge.

The Collective Bargaining Agreement explains that it is a complete agreement. The union acknowledged that it had an opportunity to bargain over any issue when it agreed to the CBA, which, relevant to this point, provides:

> "The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining. They, therefore, each voluntarily and unqualifiedly waive the right for the life of this Agreement to bargain collectively with respect to any mailer referred to or covered in this

7

Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement.

This contract represents the entire Agreement between the parties and no other agreements or practices are binding upon either party hereto with respect to wages, hours, or working conditions of the employees covered hereby."

The UFCW and Marshall Durbin bargained over the equipment which would be provided by the employer to the employees and the CBA contains a provision explaining that the employer will provide hairnets, ear plugs, vinyl gloves, vinyl aprons, white lab coats for USDA required jobs, safety glasses, heavy duty aprons, freezer gloves, freezer suits, freezer boots, back support belts, dust masks for the live hangar, rain suits, and coveralls.  The defendant contends that the uncontradicted evidence before the court establishes that the method and manner of pay of the named plaintiffs Conerly and Reese, and the other bargaining unit employees of the Hattiesburg processing plant were well established by their prior course of negotiations of the CBAs and the union made no requested changes during bargaining negotiations with respect to any of these practices.  Thus, according to the defendant, there can be no doubt that the union acquiesced in the alleged custom and practice of non-compensation for the complained of practices that had arisen.

The plaintiffs argue that Section 203(o) was enacted to exclude compensation only for practices which were required by the employer and agreed to by the union through the course of negotiations.  They contend that there was never any negotiations or discussions of the issues of which they claim no or under-compensation for in the bargaining process and thus there could have been no acquiescence therein.

8

Under the FLSA, an employer has the burden of proving that it is exempt from the overtime payment requirements. *See Idaho Sheet Metal Works v. Wertz*, 383 U.S. 190, 206-209 (1966); *Vela v. The City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). All exemptions to the FLSA must be "narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). While the Eleventh Circuit has held that § 203(o) is not an exemption but merely a "definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions", the Fifth Circuit has not gone that far and neither will this court. *See, e.g., Anderson v. Cagle's, Inc.*, 488 F.3d 945, 957 (11th Cir. 2007).

Some courts have also held a custom or practice exists even though a collective bargaining agreement is silent on the issue of compensation for donning and doffing. *See, e.g., Anderson v. Cagle's, Inc.*, 2005 WL 3873160 (M.D. Ga, 2005), *aff'd* 488 F.3d 945 (11th Cir 2007). When the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, a "practice" exists even in the absence of express terms. *Id. See also, Bejil v. Ethicon, Inc.,* 269 F3d 477,480(5th Cir. 2001)(since compensation for donning and doffing was not part of the collective bargaining agreement, nonpayment for this time was the custom and practice); *Hoover v. Wyandotte Chemical Corp.*, 455 F2d 387, 389 (5th Cir. 1972) (holding that union's abandonment of paid 25 minute clothes-changing time during CBA negotiations constituted acquiescence to employer's 15 minute policy); *Williams v, WR Grace & Co.*, 247 F. Supp 433, 435 (ED. Tenn. 1965) ("custom and practice were followed exempting clothes-changing and washing time from wage-payment").

As the defendant points out in *Cagle's, Inc.*, which is the primary case addressing the Section 203(o) defense since the Supreme Court decided *Alvarez*, the plaintiffs alleged that the defendant did not adequately compensate them for time spent donning and doffing their protective clothing.  The claims were dismissed on summary judgment based on § 203(o) because a collective bargaining agreement was in effect at all times for which the plaintiffs sought compensation.  *Id.*  The plaintiffs were required to report to work early and to remain after the close of their shifts to dress in their protective clothing which included smocks, hair nets, beard nets, and ear protection.  *Id.* at *5.

The plaintiffs were represented by the RWDSU which negotiated a collective bargaining agreement on behalf of the employees.  *Id.*  Specifically, the collective bargaining agreement gave the defendant the authority to manage the plant, including the determination of starting and quitting time, the hours to be worked and overtime.  *Id.* One provision in the CBA contained a specific, negotiated provision regarding clothing items and specified that the defendant would provide the protective gear.  *Id.*  The court's ruling, however, turned on the provision of the CBA which stated that "the Union has had full opportunity to submit all items appropriate to collective bargaining and that this Agreement incorporates the parties" full and complete understanding."  *Id.*

The defendant further argues that the existence of formal negotiations is not required in order for a custom and practice to exist.  *Turner v. City of Philadelphia*, 262 R3d 222 (3d Cir.  2001).  The Third Circuit Court of Appeals held that time spent donning and doffing was non-compensable when the undisputed facts established that

the plaintiffs acquiesced for over thirty years to a custom and practice of non-compensability for time spent changing clothes. *Id.* The court based its holding on the facts that the city had not compensated the employees for change time for over thirty years, every CBA between the city and its employees had been silent on the issue as to compensation for change time, one of the lead plaintiffs served as president of the union and proposed on several occasions that change time be compensable, and the union never filed a grievance or demanded arbitration on the non compensability of change time. *Id.* at 225.

In *Davis v. Charoen Polkphand (USA), Inc.*, 302 F. Supp 2d 1.314 (M.D. Ala., 2004), the court applied the Section 203(o) exception and dismissed all of the employees who were covered by the collective bargaining agreement. The bargaining agreement contained no provision for compensation for donning and doffing time, and one plaintiff, who was on the union's bargaining committee, testified that she talked about the issue of compensation for donning and doffing during negotiations and she knew that under the CBA she was not to be compensated for that time. *Id.* at 1321. Another plaintiff testified that she knew it was the employer's practice not to compensate for donning and doffing time both before and after they negotiated the CBA. *Id.* As such, the court found that Section 203(o) clearly applied. *Id.*

In *Saunders v. John Morrell & Co.*, 1991 WL 529542 (N.D. Iowa 1991), the court found that the deletion of a previous provision which provided for compensation for clothes-changing time was a "clear and unambiguous" expression of a mutual intent to eliminate clothes-changing time as a compensable time. The court found that the union

11

and the employer specifically negotiated the question of time spent donning and doffing safety equipment and that the provision compensating employees for this time in the prior CBA was deleted.  As such, the court held that the negotiated elimination of the provision for payment of clothes-changing time was an express exclusion under Section 203(o).  *Id.* at *3.  The court noted that even if the parties had not expressly excluded the provision, the custom and practice existed because for five years clothes-changing was not considered compensable and workers had not been paid for it.  *Id.* at *4.

Faced with the foregoing, the defendant argues that as in *Cagle's, Inc.*, the union in the instant case negotiated for and signed a CBA that did not reference compensation for donning and doffing.  Additionally, the union acknowledged in the CBA that "This contract represents the entire Agreement between the parties and no other agreements or practices are binding upon either party hereto with respect to wages, hours, or working conditions of the employees covered hereby."  Thus, the defendant contends that the union had every opportunity to bargain for all wages, hours and other conditions of employment and that for the 14 years Marshall Durbin has been bargaining with the union leading up to the present CBA , not one CBA contained a provision regarding compensation for donning and doffing.  As such, any compensation related to donning and doffing is part of a custom or practice within the exclusion of §203(o), thereby voiding any argument that alleged violations existed.

The court has carefully reviewed all of the cases and exhibits provided by the parties and conducted oral argument on the issues.  At oral argument the defendant contended that if the court granted summary judgment on the donning and doffing issue, then the case would go away.  The plaintiffs argued that donning and doffing was

only a small part of the case and in fact involved only minimal time in the overall

compensation claim.  The plaintiffs contend that the bulk of their case lies in their

claims of waiting, walking and washing, working before and after their shifts and during

unpaid rest periods or breaks, not donning and doffing.  The court agrees.  Reviewing

the plaintiffs's Complaint and the amended iterations thereof, it is clear to the court that

the plaintiffs are claiming non-compensation for activities other than merely donning

and doffing.

The Eleventh Circuit in *Cagle's, Inc.* held that "[a]bsence of negotiations

cannot in this instance equate to ignorance of the policy.  Rather, it demonstrates

acquiescence to it."  488 F.3d at 959.  This is exactly what the defendant is urging the

court to do in this instance.  However, the district court in *Cagle's, Inc.* had a fully

developed record on summary judgment before it to make its decision.  That record

included evidence of the long history of negotiation of issues between the employer and

the union and certain specific knowledge by principles of the union regarding the very

issue of donning and doffing and the union's acquiescence in the practice of

noncompensation.   That is not present here.  The defendant contends that the union

president was primarily involved in the negotiation of the present CBA and that

noncompensation for donning and doffing had long been the custom or practice of the

defendant and that the union, through its president and primary negotiator were well

aware of it.  The court cannot agree that the present record supports that conclusion.

All disputed material facts are to be resolved in favor of the plaintiffs as the

nonmoving parties at this stage.  The court is not prepared to hold as a matter of law

that the union acquiesced in the alleged custom and practice of noncompensation for

donning and doffing.  It is a close question and if the defendant offers adequate proof to support its argument, it likely will be found that noncompensation for donning and doffing was indeed an accepted custom or practice agreed to by the union, albeit by acquiescence.  That decision is, however, for another day.  Further, as noted above, even if the court granted summary judgment by finding that the noncompensation for donning and doffing was an established custom or practice under § 203(o), the summary judgment would only be partial.

## MOTION FOR NOTICE TO POTENTIAL CLASS MEMBERS

The next issue facing the court is the issue of notice to potential class members. Although not styled as a Motion for Conditional Class Certification, the plaintiffs' April 5, 2007 Motion for Notice to Potential Class Members and subsequent amendments thereto, addresses the issue of conditional class certification as well and the court will thus address it as such.  The plaintiffs have filed consent forms from at least 150 current and former employees who are or were employed during the relevant time period at the Hattiesburg plant to demonstrate the need for a collective action.

The defendant argues that this action does not warrant conditional class certification by asserting that neither Brian Conerly nor Rachel Reese, the two named representative plaintiffs, are similarly situated to the other Marshall Durbin employees on whose behalf they have been designated to proceed.  Marshall Durbin also maintains that the plaintiffs' request for permission for Notice to be given to other putative plaintiffs is improper because it has not been shown that the putative class members are similarly situated and/or that a "single decision, policy or plan" affects

14

these plaintiffs and the putative "opt in" class members.  Thus, the defendant argues that the factual distinctions between the named plaintiffs and the "opt in" plaintiffs themselves preclude efficient certification under 29 U.S.C. § 216 (b) for a conditional class certification.

Section 216(b) of Title 29 of the Unites States Code allows similarly situated plaintiffs to join together in, or "opt-in," a lawsuit and maintain a collective action against an employer who has violated the FLSA.  In making a determination as to which method should be utilized when determining whether a collective action should be certified, this court recognized that "the Fifth Circuit has expressly refused to endorse a singular method . . ."  *Gallendar v. Empire Fire and Marine Ins. Co.*, 2007 WL 325792 *1 (S.D.Miss.) (citing *Mooney v. Aramco Servs.*, 54 F.3d 1207 (5th Cir.1995)).  However, the court has followed the majority of district courts in applying the *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987), approach.  *Gallendar*, 2007 WL 325792 *2.  *See also King v. Koch Foods of Miss., LLC*, 2007 WL 1098488 *2 (S.D.Miss 2007).  *Lusardi* instructs that the court should engage in a two-step certification analysis: (1) the notice stage, and (2) the "opt-in," "merits," or decertification stage.  *Mooney*, 54 F.3d at 1213-14.

The plaintiffs bear the burden of proof on all issues pertinent to the instant motion.  *See Allen v. McWane*, 2006 WL 3246531 *2 (E.D.Tex.); *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D.Ark.2003); *D'Anna v. M/A-Com., Inc.*, 903 F.Supp. 889, 893-894 (D.Md.1995).  The representative plaintiffs must substantially establish that they and putative class members were similarly situated as to their job

15

requirements and pay provisions. *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842 *2 (N.D.Tex.); *see also* 29 U.S.C. Section 216(b)(2000); *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)(following the rule applied by the Fifth Circuit Court of Appeals in Mooney v. Aramco Servs., 54 F.3d 1207 (5th Cir.1995)). This burden of proof is not satisfied by conclusory allegations to the effect that the named plaintiffs are similarly situated to putative class members. *Salinas-Rodrigues v. Alpha Servs., L.L.C.*, 2005 WL 3557178 (S.D. Miss. Dec. 27, 2005).

The plaintiffs must also present evidence "that the putative class members were victims of a single decision, policy or plan." *Gallendar v. Empire Fire and Marine Ins. Co.*, 2007 WL 325792 *1 (citing *Allen v. McWane*, 2006 WL 3246531 *2 (internal citations omitted)). It has been observed that whereas "the standard at this stage is lenient, it is not automatic." *See Badgett v. Texas Taco Cabana, LC*, 2006 WL 2934265 *2 (S.D.Tex). *See also Anderson, et. al., v. Cagle's, Inc.*, 2007 WL 1662662 *4 (C.A.11 (Ga.)) (quoting *White v Osmose, Inc.*, 204 F.Supp.2d 1309, 1314 (M.D.Ala. 2002)) (holding that "the similarities necessary to maintain a collective action under §216(b) must extend 'beyond the mere facts of job duties and pay provisions.'").

The defendant asserts that the plaintiffs have not met their burden of proof in order to show that they are similarly situated to the putative class members based on the limited initial discovery conducted with regard to the named plaintiffs Brian Conerly and Rachel Reese. Along with the Motion for Notice to Potential Class Members, affidavits were submitted by plaintiffs Conerly and Reese in addition to several putative

class members.  With the exception of one affidavit, all of the affidavits are nearly identical with only the name of the employee and the number of years they were employed with Marshall Durbin being changed in each one.  Each employee is identified as being "a laborer on the poultry process line" and as being paid pursuant to line time.  Few other details are given.

Pursuant to the court order limiting discovery to the issue of conditional class certification, the depositions of plaintiffs Conerly and Reese were taken wherein they were questioned about the information contained in their affidavits.  According to the defendant, plaintiffs Conerly and Reese are not appropriate class representatives and cannot adequately represent all of the "opt-in" plaintiffs based on the information learned in their depositions.

Primarily, the defendant argues that Reese and Conerly's job requirements were largely different from those performed by the "line time" employees who submitted opt-in affidavits.  As mentioned above, each affidavit describes the employee as being "a laborer on the poultry process line."  The defendant points out that there are many different positions within Marshall Durbin's Hattiesburg processing plant, each one requiring the employee to have different skills and perform different tasks and not all having anything to do with the poultry processing line.  The defendant further argues that while there are "line time" employees, there are other pay classifications in place, which includes the plaintiff Rachel Reese's classification as a "pay to punch out" employee.  Further, the deboning, shipping, production, maintenance and grounds departments are not a part of the actual process line and each position requires specific equipment and/or protective gear to be utilized in its performance.

17

The named plaintiffs and the Opt-In plaintiffs who provided declarations, assert that they (1st and 2$^{d}$ process) were required to perform numerous activities without compensation, allegedly in violation of the requirements of the FLSA.  The plaintiffs have testified that they worked without compensation while:

   a. obtaining required protective gear and hygiene related equipment from the designated area in the plant;

   b. walking to and from the workstation and/or processing line;

   c. donning and doffing protective gear and hygiene-related equipment both before, during, and after their scheduled shifts;

   d. waiting for their shifts to begin;

   e. washing and cleaning time; and

   f. generally performing other pre- and post-shift activities which are required by the company or necessary to the performance of my job.

According to the defendant, the affidavits of the proposed class members, including Conerly and Reese, indicate they were paid for their scheduled line time hours, but not paid for overtime but that both Conerly and Reese stated in their depositions that they were paid overtime when they worked more than 40 hours per week.  The court has reviewed that testimony and concurs that the named plaintiffs stated just that.  However, taken in context, the court reads the testimony to say that they were paid for overtime they worked which was recognized as overtime by the defendant.  The court cannot fairly conclude that the plaintiffs were subverting their overtime claims by their deposition testimony.  Indeed, the court reads the testimony as contending that they are still owed for overtime work, walking, waiting time, etc. which the defendant did not, or refused to, recognize as overtime.  Thus, this portion of the

defendant's argument is without merit.  Indeed, the court concludes that the issue of how Conerly and Reese were actually paid is confusing, at best.  The court simply does not have enough evidence before it to conclude that neither Reese nor Conerly was in a dissimilar pay situated relative to the putative class members.

Moreover, as pointed out by the plaintiffs, the evidence presented at this stage supports the plaintiffs' allegations that Marshall Durbin has engaged in widespread wage abuses with respect to its current and former hourly employees at the Hattiesburg plant.  Further, this evidence satisfies the lenient standard set forth in the above cited cases because it substantiates the plaintiff's substantial allegations that the putative class members were together victims of a single, decision, policy and plan.  *See H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)(citing *Sperling v. Hoffman- LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).  The fact that subsequent discovery may indicate that some of the class members are not similarly situated does not work against a decision to facilitate notice to potential class members.  *Harrison v. Enterprise Rent-A-Car, Inc.*, 1998 U.S. Dist LEXIS 13131, *13 (M.D. Fla. 1998); *see, e.g., Harper*, 185 F.R.D. at 358-365 ("subsequent discovery may reinforce or undermine" the preliminary finding of similarly situated).

Another material consideration when determining whether a class should be conditionally certified is the presence of a "single decision, policy or plan" that affects all putative class members.  *Gallendar v. Empire Fire and Marine Ins. Co.*, 2007 WL 325792 *1 (citing *Allen v. McWane*, 2006 WL 3246531 *2 (internal citations omitted)).  *See also Villataro v. Kim Son Rest., L.P.*, 286 F.Supp.2d 807, 810 (S.D.Tex.2003).  If

the plaintiffs cannot show that the ". . . putative class members were together the victims of a single decision, policy or plan" that violates the FLSA, the court should not conditionally certify the class.  *Mooney, 54 F.3d at 1214, n.8;* Ray v. Motel 6 Operating, Ltd., 1996 WL 938231, at *4 (D. Minn. 1996); *Brooks v. BellSouth Telecommunications*, 164 F.R.D. 561, 566-68 (N.D. Ala. 1995).  As the defendant points out, courts deny collective action treatment and decline to authorize class notice where no common employer policy or practice exists and the resolution of claims requires individual factual determinations and defenses.  *See Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947-49 (N.D. Fla. 1994); *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465-66 (D. N.J. 1998).

In this case, the defendant contends that the plaintiffs ground their putative claims directly upon *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514  (2005).  The defendant points out that *Alvarez*, did not take effect until November 8, 2005.  This is the seminal case involving compensation of pre- and post-shift employees for time spent putting on and taking off personal protective gear and equipment.  *Id.*  However, both Conerly and Reese left the employ of Marshall Durbin before *Alvarez* was handed-down and thus the defendant argues that they cannot now claim that they were the victims of the same decision, policy or plan involving compensation for donning and doffing as the other purported/putative class members who were employed by the defendant post-*Alvarez*.  The court cannot agree with this limited view of the defendant regarding the holding pronounced in *Alvarez*.  Indeed, *Alvarez*, was not new law.  It was merely a pronouncement of what had been required under the FLSA regarding the pre- and post-shift donning and doffing of protective equipment.  To limit *Alvarez* to claims

20

which arise only after its date of decision is unwarranted based on *Alvarez* itself and the precedent upon which it relied.

## TIME AND SCOPE OF PROPOSED NOTICE

The plaintiffs contend that the proposed relevant time period for notifying class members would be three years back from the date notice issued.  The defendant contends that the statute of limitations for claims under the Fair Labor Standards Act is usually two years.  *See* 29 U.S.C. Section 255(a).  Further, the defendant argues that an exception applies only for a willful violation, under which exceptional circumstances the statute of limitations may be extended for an additional year.  The defendant does admit that in a case involving "opt-in" plaintiffs, a plaintiff's claim cannot extend back more than three years from the date the consent and joinder is filed.  *See Salinas-Rodriguez v. Alpha Service, LLC*, 2005 WL 3557178 at *4 (citing 29 U.S.C. Section 255(a)).  29 U.S.C. § 255(a) provides

> (a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;

The filing of a complaint does not toll the statute of limitation for all claims that are brought under an FLSA collective certification. The statute of limitations on an opt-in plaintiff's claim is not tolled until he or she files a consent form with the court.  29 U.S.C. § 256(b).  After reviewing the allegations, the court finds that the plaintiffs have alleged sufficient wilful violations of the FLSA so as to entitle them to issue notice to potential

class members for three years prior to the date of this order.  Based on the foregoing,

the court therefore conditionally certifies the following class and authorizes notice

thereto in a form to be submitted by the parties for approval by the court:

> All non-supervisory current and former poultry process employees or line workers who were employed by Marshall Durbin from November 5, 2004 through the present.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's

Amended/Supplemental Motion to Dismiss or for Summary Judgment **[#s 28 & 72]** is

denied and that the plaintiffs' Motion and Amended Motion for Notice to Potential Class

Members **[#s 39, 49, 92 and 110]** is granted.

IT IS FURTHER ORDERED AND ADJUDGED that the following class is

conditionally certified:

> All non-supervisory current and former poultry process employees or line workers who were employed by Marshall Durbin from November 5, 2004 through the present.

IT IS FURTHER ORDERED AND ADJUDGED that notice to the aforementioned

class shall be submitted by the parties for approval by the court withing ten days of this

order.

SO ORDERED AND ADJUDGED this the 5th day of November, 2007.


                                    s/Keith Starrett
                                    UNITED STATES DISTRICT JUDGE