IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**BRIAN CONERLY; ET AL**                                                **PLAINTIFFS**

**VERSUS**                                         **CIVIL ACTION NO. 2:06cv205KS-MTP**

**MARSHALL DURBIN FOOD CORPORATION**                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss Without Prejudice Premised on Plaintiffs's Arbitration Agreements **[#171]** filed on behalf of the defendant. The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the defendant's motion is well taken and should be granted. The court specifically finds as follows:

### FACTUAL BACKGROUND

The plaintiffs' Second Amended Complaint states a cause of action to recover allegedly unpaid wages/overtime wages pursuant to the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.* arising from the plaintiffs' employment with Marshall Durbin. Specifically, they are seeking wages claimed to be due from obtaining, doffing and donning protective gear or hygiene items, and walking to and from the plaintiffs' work stations at the defendant's plant, as well as other pre-shift and post-shift activities which the plaintiffs claim were necessary to their employment. On December 18, 2007,

this court granted the plaintiff's Motion for Court Approval of Notice Process, and mandated that all potential opt-in plaintiffs "execute, and post-mark their consent form" on or before March 28, 2008.  The claims filed by Winetta Bolton, Sandra Chapman, Shirley Dantzler, Inette M. Lampton, Karen Page, Darwin Santiago, Kalisa Smith, David Smith, LaJuanda Walker, Tarus Whigham, and Beverly Wright (collectively "the Arbitration Plaintiffs") have been challenged by the present motion. The eleven Arbitration Plaintiffs are opt-in plaintiffs who, prior to filing their consents, were members of the managerial staff at Marshall Durbin and as a result entered into the Marshall Durbin Dispute Resolution Program.  Thus, the defendant contends that as a result of each of the Arbitration Plaintiffs entering into a biding arbitration agreement with this defendant, their claims are precluded from this conditional class action brought pursuant to FLSA.

The relevant, express terms of the Marshall Durbin Dispute Resolution Program, attached in its entirety to the defendant's Motion to Dismiss as Exhibit C, are as follows:

(A) <u>INTRODUCTION</u>

Please take time to read the following material. IT APPLIES TO YOU. [emphasis in original] It will govern all existing and future employment disputes between you and Marshall Durbin Food Corporation ("Marshall Durbin.")

Effective February 24, 2006 all employee1 disputes will be referred for resolution through this Dispute Resolution Program ("DRP" or "Program"). This means that both you and Marshall Durbin will be bound to use this Program as the sole means of dispute resolution even if the events upon which the claim is based occurred or the claim was brought prior to February 24, 2006.

The Program is binding on all employees. This means that your decision to accept employment or continue your current employment after receiving notice of this Program will mean that you have agreed to and are bound by the terms of this Program. If you remain employed or accept employment, this document constitutes a binding contract between you and Marshall Durbin. Likewise, the

terms of this Program are binding on Marshall Durbin. Except as otherwise provided herein, this Program precludes an employee and Marshall Durbin from going to court to have disputes heard by a judge or jury.
This Program is part of the employment relationship between you and Marshall Durbin.

. . .

(B) <u>SCOPE OF THE ARBITRATION PROCEDURE</u>

By remaining or becoming employed after receiving notice of this Program, you consent to the resolution by arbitration of any dispute arising out of your employment, including, but not limited to, your application, your hiring, or your failure to be hired, or termination, that you may have with or against Marshall Durbin or that Marshall Durbin may have with or against you, except as otherwise provided herein. Marshall Durbin also consents to the resolution by arbitration of all disputes between you and Marshall Durbin arising out of your employment, except as otherwise provided herein.

Arbitration under this Program will be used to resolve only those disputes that would constitute a legal cause of action in a court of law.

(E)(1) <u>Requirements for Modification or Revocation.</u> This Program shall survive the termination of employment and shall apply to all disputes whether they arise or are asserted before, during or after termination of employment with Marshall Durbin.

Each of the Arbitration Plaintiffs executed an "ACKNOWLEDGMENT OF

RECEIPT OF MARSHALL DURBAN DISPUTE RESOLUTION," which provides:

I acknowledge receipt of Marshall Durbin's Dispute Resolution Program document. I understand I am obligated to read this document as it governs my employment and future legal disputes between Marshall Durban and me as defined in the document. I understand that the Marshall Durbin Dispute Resolution Program document provides that all disputes between my employer and me arising from my employment, including, but not limited to, my application, my hiring, or my failure to be hired at Marshall Durbin, or the termination of my employment will be submitted to binding arbitration in accordance with the Marshall Durbin Dispute Resolution Program instead of to a court, a judge, and a jury. I understand that I may obtain a copy of the applicable Rules by contacting human resources.

The plaintiffs respond by asserting that the defendant has failed, as a matter of

fact, to meet its burden of demonstrating the existence of a clear, unambiguous and binding waiver of the right to file an FLSA lawsuit by the plaintiffs.  However, regardless of the evidence, the plaintiffs argue that the court should focus on the purposes of the statute and its inherent protections, as established by U.S. Supreme Court and Fifth Circuit precedent to determine the validity of this arbitration clause.

Specifically, the plaintiffs respond to the defendant's statement of facts that:

a. Defendant has failed to adduce any evidence to support the facts and circumstances surrounding the manner in which the arbitration agreements were executed. There is no evidence regarding the facts and circumstances of when the Agreements were provided to and signed by the employees.

b. On their face, the Agreements do not encompass claims for unpaid overtime pursuant to the FLSA.

c. Plaintiffs do not dispute that Defendant has accurately quoted the language of the Agreements, but do dispute the import of this language.

## THE FEDERAL ARBITRATION ACT

Section 2 of the Federal Arbitration Act (the "FAA") provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (1998).  Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Southland v. Keating*, 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998).  This court recognizes that strong federal policy in support of arbitration

agreements and is acutely aware of the Supreme Court's requirement "that [courts] 'rigorously enforce agreements to arbitrate.'" *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987), (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). As provided for in Section 2 of the FAA, the contract in dispute must evidence a transaction involving interstate commerce. The Supreme Court has recognized that Congress meant to exercise the full extent of its powers under the Commerce Clause of the Constitution in enacting the Federal Arbitration Act. The Court has held that the FAA applies to any arbitration contract as long as the contract turns out in fact to have involved interstate commerce. *Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753 (1995). The plaintiffs do not dispute that the activities of the defendant in this case involve interstate commerce within the meaning of the FAA.

Once the court concludes that the matter involves interstate commerce, to determine whether the parties should be compelled to arbitrate involves a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* Once the court finds that the parties agreed to arbitrate, it must then determine whether any legal constraints external to the parties' agreement foreclose the arbitration of the claims involved. *Id.*

## **ANALYSIS**

The plaintiffs do not dispute that an arbitration agreement exists between the parties. Instead, the Arbitration Plaintiffs first assert that whether the parties agreed to arbitrate their grievances is an issue "governed by state contract law." They then claim that because "there are no facts before the Court other than the agreement itself", "[t]here is a fact issue to be resolved by the Court regarding whether the employees made an informed decision regarding whether to sign the arbitration agreement."

In Mississippi, the courts have "embraced a 'liberal federal policy favoring arbitration agreements' and will liberally construe agreements with a presumption in favor of arbitration." *Qualcomm Inc. v. American Wireless License Group*, LLC, 980 So. 2d 261, 268-69 (Miss. 2007) (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss.2004)). "In addition to establishing a strong presumption in favor of arbitration, the [Federal Arbitration] Act also limits the role of the court to determining whether an issue is arbitrable. The court's sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute." *Terminix Int'l*, 904 So. 2d at 1054.

In order to determine the validity of an arbitration agreement, Mississippi contract law mandates the court analyze the "four corners" of the contract and "the language the parties used in expressing their agreement. When [the] instrument is determined to be clear or unambiguous, the parties' intent must be effectuated." *Gatlin v. Sanderson Farms, Inc.*, 953 So.2d 220, 222 (¶ 3) (Miss. 2007). Further, "only generally applicable contract defenses, such as fraud, duress, or unconscionability, can be used to invalidate arbitration provisions or agreements" governed by the Federal Arbitration Act. *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 514 (¶ 11) (Miss. 2005).

Upon review of the "four corners" of the arbitration agreement at issue, the court concludes that there is a valid contract.

The Arbitration Plaintiffs make no argument nor did they submit any evidence that the arbitration agreements were invalid as a result of fraud, duress, or unconscionability. Instead, the plaintiffs assert that Marshall Durbin is charged with some burden of bringing forth facts regarding the signing of the arbitration agreement. However, the defendant is only required to place the arbitration agreement before the court and, if unambiguous according to its four corners, the intent therein should be effectuated.

The agreement between the Arbitration Plaintiffs and Marshall Durbin is that "any dispute arising out of your employment" shall be "reso[lved] by arbitration. . . .". Thus, based upon the unambiguous language of the arbitration agreement and the Arbitration Plaintiffs' failure to raise any defenses to the arbitration agreement, the court concludes that there is a valid agreement between the parties to arbitrate.

Finally, the plaintiffs argue that their FLSA claims do not fall within the scope of the arbitration agreement. However, even a casual review of the arbitration agreement reveals that such claims fall directly within the purview of the agreement. The agreement states that it extends to "all disputes between [Marshall Durbin] and [the Arbitration Plaintiffs] arising from [the Arbitration Plaintiffs' employment", "and shall apply to all disputes whether they arise or are asserted before, during or after termination of employment with Marshall Durbin." The term "arising from my employment" is broad language, and the Arbitration Plaintiffs' claims regarding how they were paid during their employment with Marshall Durbin certainly arise from their

employment with Marshall Durbin.  For this reason, the Arbitration Plaintiffs' argument that their instant action does not come within the scope of their arbitration agreement is without merit.

Likewise, the plaintiffs tenuous argument that the FLSA prohibits arbitration of wage disputes is without merit.  *See Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297-98 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 n.5, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319-20 (9th Cir.1996) ("finding no evidence that Congress intended to preclude arbitration of FLSA claims in the text or legislative history of the statute"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir.2002) ("holding that FLSA claims are arbitrable")).  In addition, "[a]n agreement to arbitrate under the FAA is effectively a forum selection clause, . . . not a waiver of substantive statutory protections and benefits."  *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 678 (5th Cir. 2006) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. . . .")).

For the foregoing reasons the court concludes that the Arbitration Plaintiffs should be dismissed without prejudice from the instant action so that they may pursue, if desired, their individual claims in arbitration.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion to Dismiss **[#171]** the eleven plaintiffs subject to arbitration is granted and the claims of

Winetta Bolton, Sandra Chapman, Shirley Dantzler, Inette M. Lampton, Karen Page, Darwin Santiago, Kalisa Smith, David Smith, LaJuanda Walker, Tarus Whigham, and Beverly Wright are dismissed without prejudice to pursue their arbitration claims if they each so desire.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 15th day of October, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE